No. 40,237

Naomi Linville, *Appellee*, v. Nance Development Company, *Appellant*.

(304 P. 2d 453)

Opinion filed December 8, 1956.

*Marion C. Miller*, of Kansas City, argued the cause, and *Edw. A. Benson, Jr.*, also of Kansas City, and *Morris Dubiner, Robert E. Gregg*, and *Fredrick E. Lewis*, all of Kansas City, Missouri, were with him on the briefs for the appellant.

*Joseph P. Jenkins*, of Kansas City, argued the cause, and *Joseph Cohen, Charles S. Schnider, Thomas E. Joyce, John E. Shamberg, Albert M. Ross, Norma Braly*, and *Harold K. Wells*, all of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action wherein plaintiff sought to recover damages arising from the construction of a ditch over her real estate by the defendant, which appeals from a judgment rendered against it.

Although the admissibility of parts thereof was questioned, as later noted, the evidence which supports the verdict and judgment later mentioned disclosed the following.

In February, 1952, the defendant, Nance Development Company, then the owner of a tract of about ten acres, filed a plat thereof as Nance's First Division. This plat shows the addition has two unnumbered blocks, divided by a north and south street, containing a total of 36 lots. The lot at the southeast corner of the east block is No. 36 and immediately to its north is lot 35, the real estate here involved; to the west of lot 35 is lot 20. The plat discloses that along the rear of every lot in the addition there is a five foot utility easement. The plat also discloses that there is a fifteen foot easement for surface drainage, which commences at the north line of the west block and proceeds south at the rear of the east tier of lots for a distance and then goes directly east so that the south half thereof covers the north seven and one-half feet of lot 20. The easement then turns south and is on the east fifteen feet of lot 20. The east line of the easement on lot 20 is the dividing line between lot 20 and lot 35. On some date prior to July 24, 1952, plaintiff and her husband, from whom she was later divorced as hereafter stated, viewed various lots in the addition intending to select one on which defendant was to build a residence which they would purchase. Negotiations were had between the defendant and the plaintiff and her husband for the sale and purchase of a lot at which time plaintiff and her husband were shown the plat of the addition and the reservations were mentioned. They concluded to purchase lot 35, which at that time was level. On July 24, 1952, the defendant and plaintiff and her husband entered into a written agreement for the sale and purchase of lot 35 for $11,500, consisting of a down payment and later payment on delivery of a deed. This contract stated the sale was "Subject, however, to street, alley and *public utilities rights-of-way* and building restrictions, driveway easements, party wall agreements and *community contracts, if any, shown of record . . ."* (Emphasis supplied.) After the contract was signed plaintiff and her husband went to the site and viewed the progress of construction of the dwelling but saw no excavation for a ditch until they started to move furniture into the house on November 1, 1952, when there was an excavation across the rear of their lot, the west side of which was about five feet east of their west line. The excavation was about six feet deep

and about fifteen feet wide and the dirt from it was piled to the east of the ditch and as high as the house. The plaintiff and her husband took the matter up with defendant which said it was looking for a gas line and as soon as it was found, the dirt would be replaced and the lot smoothed; that they moved in and defendant kept telling them the ditch would be filled in "as soon as the weather permitted." Relying on defendant's statements it would fill the ditch and smooth up the lot, in January of 1953 plaintiff and her husband signed up necessary mortgage papers and received a deed and it was recorded on January 20, 1953. In this deed the lot was conveyed "Subject to all restrictions and easements now of record." Thereafter defendant refused to fill the ditch and smooth the lot as agreed, and in September, 1953, plaintiff and her husband commenced an action to recover damages in the sum of $3,000.

We need not follow through the course of the pleadings, but on March 15, 1955, the plaintiff and her husband filed their second amended petition which contained allegations as to the facts above set forth. Defendant's answer included that the cause of action was barred by the statute of limitations; that plaintiffs took possession of the real estate and accepted a deed thereto and paid the balance of the purchase price to defendant, all with knowledge of the matters complained of by them; that the contract of sale became merged in the deed and plaintiffs were estopped from asserting any claimed breach of contract. Defendant also alleged that the acts complained of by the plaintiffs were at the express instance, direction and authority of duly constituted public authority relative to defendant's performance of its agreement, and the exercise of such authority was within the purview and contemplation of the parties in the execution, terms and performance of said contract. Plaintiffs' reply was a general denial. On August 31, 1955, Naomi Linville was divorced from James F. Linville by judgment of the district court of Johnson county. On the morning the instant case came on for trial, November 18, 1955, Naomi Linville moved the court for permission to amend her second amended petition to strike the name of James F. Linville. At that time defendant objected that Naomi Linville would be entitled to only one-half of the damage. The proposed amendment was made, and asserted that Naomi Linville had been damaged in the sum of $3,000.

The trial was by a jury which returned a verdict in favor of the plaintiff for $3,000. The defendant's written motion for a new trial,

and its oral motion that the verdict be reduced to $1,500, were overruled by the trial court and judgment was rendered in favor of the plaintiff and against the defendant for $3,000 and costs. In due time the defendant perfected its appeal to this court.

As a predicate to an argument of its specific contentions appellant states this is an action for breach of contract; that the petition alleges that the ditch was not provided for in the contract of sale or in the deed and was in violation of their terms and conditions, which provided for conveyance by appellant to appellee and did not provide for the digging of a ditch or any easement pertaining thereto; that it had never been pointed out what specific provision prohibited the ditch or how any specific provision of the contract or deed had been violated; that the ditch was not provided for or against, and the contract being silent nothing should be read into it; that the contract was complete, covered all matters contemplated and intended to be expressed and purposely excluded things not covered or mentioned and that there was no ambiguity or uncertainty and no rules of construction apply; that the construction of the contract should be resolved against the appellee and should not be extended by implication to include anything not plainly intended. In general support our attention is directed to *Sporn v. Overholt,* 175 Kan. 197, 262 P. 2d 828. As will develop later, we do not accept fully the predicate stated.

Appellant first contends it was error to permit testimony as to conversations appellee and her husband had with appellant's agent before the contract of sale was signed because such conversations were merged in the contract and were an attempt to vary the terms thereof, and our attention is directed to numerous authorities holding that the general rule is that when parties carry on oral conversations and negotiations leading to the signing of a written contract, all such prior and contemporaneous conversations and negotiations are deemed to be merged in the contract and must be determined from the contract; that parol evidence is not admissible to vary the terms of the written instrument, and where the contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible. (See, *e. g., McKay v. Clark,* 162 Kan. 653, 659, 178 P. 2d 679, and *Cherry v. Joyce,* 168 Kan. 475,

213 P. 2d 1010.) We shall devote no space to the above rules, which are a correct statement of the law, but we cannot agree that application of them results in any holding that the evidence complained of, *i. e.*, as to the type and character of the easements covering not only the particular lot, but the adjoining one, is inadmissible. The portion of the contract of sale with reference to easements has been quoted above. In our opinion that language is not so complete, unambiguous and free from uncertainty that parol evidence was inadmissibile, and that appellees could not testify, as they did, that plats of the addition were shown them and the various easements pointed out. That the plat showed the easement for drainage abutted but did not cross, appellee's lot, is not open to debate. There is no controversy respecting the easement for public utilities, no contention there were any street, alley or building restrictions, or any driveway easements or party wall agreements. However, the contract also used the words "community contracts" which are defined at no place. We are of the opinion that the easement for drainage, which affected the whole addition, even though it only abutted and did not cross appellee's lot, might well be considered a community contract. The contention made is not sustained.

Appellant's second contention is that the trial court erred in permitting oral testimony of conversations after the contract was signed as to the reason for making the ditch and as to promises that the ditch would be refilled and the lot leveled. It is argued this testimony was inadmissible on three grounds: (1) the parol evidence rule; (2) the conversations as well as the contract were merged in the subsequent warranty deed (a matter later discussed); and (3) there was no consideration to support any further promise after the contract of sale was executed. The gist of appellant's argument is that this evidence injects into the contract something which cannot be found in its terms, that is, any specifications for drainage. It is true the matter of a drainage ditch is not mentioned in the contract, nor in the deed. The contract made specific reference to easements which have been treated above and the digging of the ditch preceded delivery of the deed. The effect of delivery is treated later. We cannot follow appellant's argument that as the contract made no mention of the ditch, evidence concerning it violates either the parol evidence rule or warrants application of the rule that previous negotiations were merged in the contract. The contract, as well as the later delivered deed, called for convey-

ance of the lot subject to stated exceptions as to restrictions and easements of record, and no one contends that under any of them appellant had any right whatever to invade appellee's lot and put a deep, wide ditch across it. If it had no such right, and we hold it did not, certainly testimony that it did so in violation of its agreement as evidenced by the contract and the later delivered deed, was admissible. Nor do we subscribe to appellant's contention that his agreement to fill in the ditch and level the ground was unenforceable for the reason there was no consideration for its promise. Having invaded appellee's lot, appellant stated it was endeavoring to locate a gas line and as soon as it was found the ditch would be filled and the ground leveled. On the strength of that promise appellee went into possession under the contract and later closed the entire transaction. It seems idle to us to say appellant's promise was without consideration.

Appellant's third contention is that there can be no action for breach of the original contract because it was merged in the warranty deed later accepted by the appellee. There can be no contention but that the general rule is that there is a presumption that when a deed is executed by a grantor and accepted by a grantee as performance of a contract to convey, the contract is merged in the deed (*e. g., Palmer v. The Land & Power Co.*, 172 Kan. 231, 239 P. 2d 960). The difficulty with appellant's position is that its action in digging the ditch was not authorized under the contract of sale, nor, had it then been executed and delivered, under the deed. The situation disclosed by the evidence is that after the contract of sale was executed, which did not provide therefor, appellant invaded appellee's lot and dug the ditch. When its right was challenged it made its explanation of why it did so, made its promise to refill the ditch and upon appellee's reliance upon its promise it would do so, appellee accepted the deed. For us to say that the acceptance of the deed, under such circumstances, resulted in a merger of contract with deed and that appellee cannot now complain, is unwarranted. The presumption of merger is overcome by the facts.

Appellant's fourth contention is that it did not fail to perform its contract and therefore did not breach it. Directing attention to *Scott v. Kirkham*, 165 Kan. 140, 193 P. 2d 185, where it was held that the character of title which a purchaser of real estate will accept from a vendor is, like any other transaction, subject to contract, appellant says that under its contract it executed and delivered a

deed conveying the property free and clear of all liens and encumbrances except as provided, the deed warranting seizing and that the property was free and clear of all other and former grants, etc., and that it would warrant the title against all persons lawfully claiming the same, and that having done so it had fully performed. As we see it that is not a complete answer. The appellant contracted to convey by warranty deed free and clear from all liens and encumbrances, except as provided, which means the rights of way, restrictions, easements and contracts included in the clause of the contract as quoted above, and in the deed, and covenanted that it was lawfully seized of an estate in fee simple of the granted premises, which was the lot subject to restrictions and easements now of record, and would warrant and defend the same against the party of the first part, its successors and assigns, etc. Certainly none of these covenants authorized it to enter upon the lot and dig the ditch across it, and when it did so it violated appellee's right of possession and quiet enjoyment. Appellant's contention cannot be sustained.

Appellant's fifth contention is that it has no liability for the breach of any covenant of the deed. The argument is premised on its contention the contract of sale was merged in the deed, a matter previously discussed, and in effect is that the ditch was plainly visible and did not constitute an encumbrance, citing *Feldhut v. Brummitt,* 96 Kan. 127, 150 Pac. 549; that appellee had an opportunity to and did see the ditch and had no cause of action against it as the seller for the breach of warranty by reason of the encumbrance, citing *Ireton v. Thomas,* 84 Kan. 70, 113 Pac. 306, 32 L. R. A. n. s. 737. Appellant also cites and quotes from *Van Sandt v. Royster,* 148 Kan. 495, 83 P. 2d 698, and *Miller-Carey Drilling Co. v. Shaffer,* 144 Kan. 508, 61 P. 2d 1320, in support of the contention. Appellant also contends that the purchaser, having taken and retained possession, is prevented from setting up a claim that the grantor agreed to convey the title free from encumbrance, citing *Lane v. George,* 84 Kan. 823, 115 Pac. 589, and *Lasley v. Pendleton,* 109 Kan. 466, 200 Pac. 274. We pause to note that in the *Lane v. George* case, the estoppel is against one who accepts a deed without objection and remains in possession. We have examined the above cases and conclude that, by reason of the facts before us, they are not controlling here. The present action is not based on violation of the covenant against encumbrances—on the contrary, it is based

on violation of the covenant as to quiet possession. Under the verdict and the judgment, the fact is that possession of the property was taken and the deed was accepted by appellee and her husband on the express promise of the appellant that as soon as a gas line was located the ditch would be filled and the lot levelled and its later statement that would be done as soon as the weather permitted. Appellant will not be permitted to induce appellee to enter into possession and to accept a deed, under the facts here existing, and then repudiate its agreement and assert estoppel against its grantee. (See *Read v. Loftus*, 82 Kan. 485, 108 Pac. 850, and *Gonder v. Phares*, 109 Kan. 322, 198 Pac. 962, for applications of the rule stated.)

Appellant's sixth contention is that the trial court erred in submitting, as wrong and improper, instructions as to the measure of damages. The appellant had requested the jury be instructed that if it find the damage was permanent in character, the measure of damages would be the fair market value before and after the injury and "Permanent damage is defined as damage which cannot be repaired or abated." Without going into detail the evidence showed that the ditch crossed not only the appellee's lot but the lot to the south and then passed under a culvert or bridge erected by public authority after the contract of sale had been executed. The evidence further disclosed the impossibility of eliminating the ditch on the particular lot and the practicability of containing it in a concrete box or culvert. The court, having heard that evidence, as well as contradicting evidence, instructed the jury the measure of damages would be the fair and reasonable cost of repairing and restoring the property to the original condition contemplated in the contract. The complaint is that the jury was deprived of determining whether the damage was temporary or permanent and it is argued the damage was permanent but that there was no proper proof of value before and after the injury. In the recent case of *Foster v. Humburg*, 180 Kan. 64, 299 P. 2d 46, this court considered the rules for the recovery of damages where property had been injured by the unlawful act of another, and recognized that the measure of damages frequently applied was the difference between the value before and immediately after the accident, but that there was no hard and fast rule; that the measure for injuries done might differ according to the facts, and that the amount of damage for restoring

a building to the condition in which it was before the injury was a correct rule. As applied here we think it may not be said the instruction given was erroneous.

Appellant's seventh contention is that appellee's recovery should be limited to one-half of the amount of the damage of $3,000 as found by the jury. Its argument runs that the injury occurred while appellee and her husband were prospective owners under the contract and later were the owners after delivery of the deed and therefore equally interested in any recovery; that when she obtained a divorce on August 31, 1955, her husband's interest in the cause of action for damages was not awarded to her and the effect of the decree was to exclude her of any interest in his property not mentioned, reserved or provided for in the decree of divorce (*Chapman v. Chapman*, 48 Kan. 636, 29 Pac. 1071); that in a divorce action all matters concerning division of property and obligations arising out of or connected with the marital relation may be presented, but if not, the judgment is a complete bar to a subsequent assertion (*Zellner v. Zellner*, 155 Kan. 530, 127 P. 2d 428); that James F. Linville's cause of action was personal to him and did not run with the land, and appellee had no right to recover the full damage. Appellee's answer to the contention is summarized. She calls attention to our statutes pertaining to divorce and the division of property between the parties and to the fact that under the decree she was given the real estate free of any claims of her husband and that she assume and pay the mortgage on the property, the balance due being about $9,843, and that the only damage sought is to the particular real estate decreed to her; that her former husband, at the time of the trial, had no interest in the real estate and could not recover for any damage to it.

It is not a subject of debate that a covenant for possession and quiet enjoyment is one that runs with the land, nor need we discuss at length the rule that ordinarily a covenant of warranty, when broken, ceases to run with the land and becomes a chose in action (*Schultz v. Cities Service Oil Co.*, 149 Kan. 148, 86 P. 2d 533). We shall not dwell on any confusion arising from the fact the contract of sale was executed under date of July 24, 1952, and under it the seller executed a warranty deed to the Linvilles under date of September 18, 1952, which was not delivered until some day in January, 1953, and that the ditch complained of was made shortly before

November 1, 1952. As stated heretofore, the contract price was $11,500, and when the deed was delivered to appellees they executed a mortgage to secure an amount not set out or specifically referred to in the evidence as abstracted. When the divorce action was tried in August, 1955, matters concerning lot 35 in Nance's First Addition and the amount of this mortgage were before the court in considering alimony and division of property, for the trial court made a specific order that the plaintiff in that action, the appellee here, pay the mortgage "the present balance of which is $9,842.89," and awarded the property to her free and clear of any right, title or interest of her husband. As of the date of the divorce the parties to that action had an apparent equity of about $1,650 in the real estate. We will not interpret the decree of divorce as awarding to the divorced husband any interest in any cause of action for damages to the real estate. We do interpret the decree as awarding to the plaintiff in that action, the appellee here, the real estate, and all that pertained to it, including any right of action there may have been for damages to it. The contention the appellee's recovery should be limited to one-half of the damages found by the jury cannot be sustained.

Appellant's contentions that the appellee was mistaken as to her remedy; that the trial court erred in overruling appellant's demurrer to the second amended petition, in overruling its demurrer to appellee's evidence, and in overruling its motion for a directed verdict, are all premised on its contentions that evidence as to oral conversations was wrongfully received; that the contract of sale excluded liability for existence of the ditch; that the contract was merged in the deed, and that there was no breach of the covenants of the deed. Appellant's further contentions that the trial court erred in rendering judgment on the verdict and in denying appellant's motion for a new trial are not separately argued. What has been said in this opinion demonstrates that none of the contentions set forth in this paragraph can be sustained.

The judgment of the trial court is affirmed.